444 So.2d 257 (1983)
STATE of Louisiana
v.
Morris HARRIS.
No. 83 KA 0613.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
Writ Denied February 27, 1984.
*258 Ossie B. Brown, Dist. Atty., Jeff Hollingsworth, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Jeffrey Calmes, Baton Rouge, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
*259 LANIER, Judge.
The defendant, Morris Harris, was charged in a bill of information with possession of pentazocine in violation of La. R.S. 40:967(C) and illegal possession of a firearm by a convicted felon in violation of La.R.S. 14:95.1. Harris filed a motion to suppress evidence seized at his residence pursuant to a search warrant. The trial judge denied this motion. Harris pled not guilty to both offenses and waived his right to a trial by jury. Counsel for the state and Harris stipulated that the matter would be submitted to the trial judge on the evidence produced at the preliminary examination. The trial judge found Harris guilty as charged. Harris was sentenced to be imprisoned at hard labor in the custody of the Louisiana Department of Corrections for a term of six years on each offense, with credit for time served. These sentences were ordered to run concurrently with each other and concurrently with any other sentence being served by Harris.

FACTS[1]
Prior to September 10, 1982, the operators of "Living Environment" reported to the East Baton Rouge Parish Sheriff's Office that one of their company vehicles was burglarized while parked at the Centroplex in Baton Rouge, Louisiana, and that approximately 200 blank checks in the name of "Living Environment" had been taken. Also prior to September 10, 1982, the forgery section of the East Baton Rouge Parish Sheriff's Office determined that an individual named Ray Carrell successfully cashed two forged "Living Environment" checks in East Baton Rouge Parish.
On September 9, 1982, Lieutenant Michel C. Fourrier of the East Baton Rouge Parish Sheriff's Office was contacted by a confidential informant who advised that he (or she) was present in a residence located at 1017 East Polk Street, Baton Rouge, Louisiana, on September 9, 1982, and observed a large quantity of bank checks in the name of "Living Environment". The informant further advised that the occupant of the premises, Ray Carrell, was in the process of forging the checks in preparation for cashing them. The informant had worked with Fourrier for the past three years and had provided information that led to the arrest and conviction of at least six individuals and to the seizure of contraband and controlled dangerous substances in East Baton Rouge Parish.
Armed with the above information, Fourrier secured a search warrant from a district judge at approximately 10:30 a.m. on September 10, 1982. The search warrant was executed by Corporal Richard Sullivan of the East Baton Rouge Parish Sheriff's Office and several other officers at 11:20 a.m. on September 10, 1982. At the time that this search warrant was executed, the only person present on the premises of 1017 East Polk Street was Morris Harris. The police officers conducting the search seized twenty-three sets of pentazocine (also referred to as "talwin" and "T's and blues"), a stolen checkwriter, a .45 caliber revolver, a .38 caliber pistol and a .22 caliber rifle. The .45 caliber revolver and the .22 caliber rifle had the serial numbers removed. Morris Harris was placed under arrest when these items were discovered.

SEARCH AND SEIZURE
The search warrant authorized the search of the residence located at 1017 East Polk Street, Baton Rouge, Louisiana, for bank checks in the name of "Living Environment". Harris contends that the trial court should have granted his motion to suppress the evidence seized at the residence because the search warrant did not describe the place to be searched with sufficient particularity. Specifically, he asserts that the residence searched was actually a rooming house and not a single family *260 dwelling and that his room constituted a separate "sub-unit" or "apartment" which required a particular description in the search warrant.
No search warrant shall issue unless based on probable cause, supported by oath or affirmation and particularly describing the place to be searched. U.S. Const. amend. IV; La. Const. of 1974, art. I, § 5; La.C.Cr.P. art. 162. The object of the particularity requirement is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable probability that the police will not search the wrong premises, the description is sufficient. State v. Brown, 412 So.2d 1064 (La.1982); State v. Manzella, 392 So.2d 403 (La.1980); State v. Cobbs, 350 So.2d 168 (La.1977). Since this is a search conducted pursuant to a warrant, the burden of proof is on Harris to prove the grounds of his motion. La.C.Cr.P. art. 703(D).
Lieutenant Fourrier testified that the informant told him that the premises at 1017 East Polk Street was a "regular house" that was used to "make some money by renting separate portions of it", but it was not being rented and was under one occupancy. Corporal Sullivan testified at the motion to suppress that when the officers entered the residence they observed numerous doors and held off entering into any rooms. The officers then discussed whether or not the house was built for multiple occupancy and whether or not the search warrant had to be reissued to be more specific. The officers then met Harris who advised them that he was solely responsible for the residence, that his father was in the hospital and that there were no other tenants in the building at that time. Sullivan determined that Harris was staying in west bedroom number 1. At the preliminary examination, Corporal Sullivan testified that the east portion of the residence was occupied by Samuel Harris, Morris Harris' father, and that the remainder of the residence was unoccupied except for Morris Harris' room.
The only witness called to support Harris' contention that the residence was a multiple occupancy building at the time of the search was the defendant's brother, Joe Harris. He testified that the residence belonged to his father, that he had power of attorney over it since 1976 and that the residence had always been a rooming house. Joe Harris was responsible for collecting the rent, paying the taxes and maintaining the building. He produced rent receipts showing rental payments from June 1, 1980, to August 1, 1982. No receipts were offered to show rental payments made at the time the search was conducted. Joe Harris further testified that he thought a person was renting a room on the day of the search. He further indicated that Morris Harris occupied two rooms at the residence searched and also lived next door at their mother's house when the electricity was turned off. Joe Harris did not know where Morris Harris was living on the day of the search.
When there is conflicting testimony on a factual matter, the credibility of witnesses is at issue and such a factual determination is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. Cobbs, 350 So.2d at 172. It is implicit in the trial judge's ruling that he accepted the testimony of Fourrier and Sullivan and did not place any weight on that of Joe Harris. We have carefully reviewed the record and find that the trial judge's ruling is not clearly contrary to the evidence.
The informant indicated that the stolen checks were located in the residence but not in a specific place therein. Harris admitted to the police officers that there were no other occupants of the residence and that he was responsible for the premises. The police officers found the drugs in Morris Harris' room, the stolen checkwriter in unoccupied west bedroom number 2 and the firearms in the portion of the building used by Samuel Harris. Under all of these circumstances, the search warrant adequately *261 described the place to be searched with sufficient particularity to prevent the search of the wrong premises. The ruling of the trial court on the motion to suppress is correct. State v. Hymer, 400 So.2d 637 (La.1981).
This assignment of error is without merit.
ADEQUACY OF EVIDENCE TO CONVICT FOR ILLEGAL POSSESSION OF FIREARM BY CONVICTED FELON
Harris contends that there is insufficient evidence to support his conviction of possession of a firearm by a convicted felon. In particular, he claims that the State has failed to prove that he was a convicted felon.
The state alleges in the bill of information that on September 10, 1982, in the Parish of East Baton Rouge, State of Louisiana, Morris Harris "having been convicted of simple burglary, a felony, on or about May 11, 1972, in the 19th Judicial District Court, possessed a firearm, to wit: a .45 caliber pistol, a .38 caliber pistol and a .22 caliber rifle...". La.C.Cr.P. art. 483.
La.R.S. 14:95.1 provides in pertinent part as follows:
A. It is unlawful for any person who has been convicted of ... simple burglary... to possess a firearm or carry a concealed weapon.
B. Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than three nor more than ten years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.[[2]]
C. Except as otherwise specifically provided, this Section shall not apply to the following cases:
(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
The elements of the offense as charged in this case are: (1) on September 10, 1982, Morris Harris, in the Parish of East Baton Rouge, State of Louisiana; (2) had possession of the specified firearms; (3) the possession was with the requisite general criminal intent; (4) Morris Harris had been convicted of simple burglary on or about May 11, 1972, in the 19th Judicial District Court; and (5) ten years had not elapsed since the completion of the sentence for the prior conviction. State v. Husband, 437 So.2d 269 (La.1983); State v. Cobb, 419 So.2d 1237 (La.1982); State v. Mose, 412 So.2d 584 (La.1982).
The parties stipulated that the testimony given at the preliminary examination would be the evidence at the trial of the case. The following testimony of Corporal Sullivan is the only evidence given at the preliminary examination on Harris' prior felony conviction:
Q Were you able to ascertain whether or not Morris Harris was a convicted felon?
A Yes, sir; I was.
. . . . .
Q And, do you remember what Mr. Harris had been convicted of as to whether or not he would fit under the provision of a felon in possession of a firearm?
A I believe it wasuhaggravated burglary. I'd have to refer to the rapsheet to be specific. But, he did fit under the category.
This testimony is hearsay evidence. Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an *262 assertion to the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Tonubbee, 420 So.2d 126 (La.1982); State v. Martin, 356 So.2d 1370 (La.1978). Hearsay evidence is inadmissible except as provided by law. La.R.S. 15:434. A witness can testify only as to facts within his knowledge and may not recite facts heard by him except as provided by law. La.R.S. 15:463. An exception to these rules is that hearsay testimony is admissible at a preliminary examination. State v. Antoine, 344 So.2d 666 (La.1977). Harris did not object to this testimony at the preliminary examination or at the time it was agreed that this evidence would be used in lieu of a trial. Hearsay evidence not objected to constitutes substantive evidence and may be used by the trier of fact to the extent of any probative or persuasive powers that it might have. State v. Clark, 387 So.2d 1124 (La.1980); State v. Boutte, 384 So.2d 773 (La.1980); State v. Small, 427 So.2d 1254 (La.App. 2nd Cir.1983).
A plea of not guilty places upon the state the burden of proving beyond a reasonable doubt each element of the crime charged. La.R.S. 15:271; La.C.Cr.P. art. 804(A)(1); State v. Humphrey, 412 So.2d 507 (La.1981); State v. Gomez, 433 So.2d 230 (La.App. 1st Cir.1983), writ denied 440 So.2d 730 (La.1983). Part of the state's proof is that Morris Harris was convicted of simple burglary in the Nineteenth Judicial District Court on or about May 11, 1972, and that ten years has not elapsed since the completion of that sentence. Although the evidence may be construed to show that Harris had a prior felony conviction, there is no evidence of record to prove the specific offense for which he was convicted, the date of the conviction, the court where the conviction occurred or that less than ten years had elapsed since the sentence terminated. The record does not reflect why the state did not introduce the documentary evidence usually used to prove these elements of the offense. Where the state has produced no evidence of an essential element of a crime charged, the defendant is entitled as a matter of law to a judgment discharging him. State v. Peoples, 383 So.2d 1006 (La.1980); State v. Davis, 371 So.2d 788 (La.1979); State v. Thompson, 366 So.2d 1291 (La.1978).
The defendant's conviction and sentence for illegal possession of a firearm by a convicted felon are reversed, and the defendant is ordered discharged on this charge.

DECREE
For the foregoing reasons, the defendant's conviction and sentence for possession of pentazocine are affirmed and his conviction and sentence for illegal possession of a firearm by a convicted felon are reversed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] In determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion but may also consider pertinent evidence given at the trial (in this case the transcript of the preliminary examination). Cf. State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Beals, 410 So.2d 745 (La.1982); State v. Chopin, 372 So.2d 1222 (La.1979).
[2] The sentence imposed by the trial court for this offense is illegal because it did not provide that the imprisonment would be without benefit of probation, parole, or suspension and it did not impose the mandatory fine.